IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

AMANDA TROUTMAN,                    )
                                    )
        Plaintiff,                  )
                                    )
v.                                  )
                                    )   Case No. CIV-21-920-SM
KILOLO KIJAKAZI,                    )
ACTING COMMISSIONER                 )
OF SOCIAL SECURITY,                 )
                                    )
        Defendant.                  )

## MEMORANDUM OPINION AND ORDER

Amanda Troutman (Plaintiff) seeks judicial review of the Commissioner

of Social Security's final decision that she was not "disabled" under the Social

Security Act. *See* 42 U.S.C. §§ 405(g), 423(d)(1)(A). The parties have consented

to the undersigned for proceedings consistent with 28 U.S.C. § 636(c). Docs. 14,

15.[1]

Plaintiff asks this Court to reverse the Commissioner's decision and

remand the case for further proceedings because "the [Administrative Law

Judge (ALJ)] improperly discounted . . . the opinion of treating provider, Dr.

Sterling Riggs, MD." Doc. 16, at 7. She argues she cannot use her hands and

fingers on a frequent basis, as the ALJ concluded. *Id.* After a careful review of

---

[1]      Citations to the parties' pleadings and attached exhibits will refer to this
Court's CM/ECF pagination. Citations to the AR will refer to its original
pagination.

the record (AR), the parties' briefs, and the relevant authority, the undersigned recommends the Court affirm the Commissioner's decision. *See* 42 U.S.C. § 405(g).

## I.    Administrative determination.

### A.    Disability standard.

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). "This twelve-month duration requirement applies to the claimant's inability to engage in any substantial gainful activity, and not just [the claimant's] underlying impairment." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citing *Barnhart v. Walton*, 535 U.S. 212, 218-19 (2002)).

### B.    Burden of proof.

Plaintiff "bears the burden of establishing a disability" and of "ma[king] a prima facie showing that [s]he can no longer engage in h[er] prior work activity." *Turner v. Heckler*, 754 F.2d 326, 328 (10th Cir. 1985). If Plaintiff makes that prima facie showing, the burden of proof then shifts to the

Commissioner to show Plaintiff retains the capacity to perform a different type of work and that such a specific type of job exists in the national economy. *Id.*

### C.    Relevant findings.

#### 1.    ALJ's findings.

The ALJ assigned to Plaintiff's case applied the standard regulatory analysis to decide whether Plaintiff was disabled during the relevant timeframe. AR 16-24; *see* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *see also Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) (describing the five-step process). The ALJ found that Plaintiff:

(1)    had not engaged in substantial gainful activity since January 31, 2019, the alleged amended onset date;

(2)    had the following severe medically determinable impairments: inflammatory arthritis, lupus, osteoarthritis of the bilateral feet and knees, spinal stenosis, joint narrowing in hands, and edema;

(3)    had no impairment or combination of impairments that met or medically equaled the severity of a listed impairment;

(4)    had the residual functional capacity[2] (RFC) to perform light work but was limited to occasional stooping, kneeling and crouching, and she could only frequently handle and finger;

(5)    was able to perform her past relevant work of night auditor, security guard, and police dispatcher;

---

[2]    Residual functional capacity "is the most [a claimant] can still do despite [a claimant's] limitations." 20 C.F.R. §§ 404.1545 (a)(1), 416.945(a)(1).

(6)     could also perform jobs that exist in significant numbers in the national economy, such as cashier II, marker, and as a sales attendant; and so,

(7)     had not been under a disability from January 31, 2019 through December 29, 2020.

*See* AR 20-28. The claimant bears the burden of proof through step four of the analysis. *Blea v. Barnhart*, 466 F.3d 903, 907 (10th Cir. 2006).

### 2.     Appeals Council's findings.

The Social Security Administration's Appeals Council denied Plaintiff's request for review, *see* AR 4-9, making the ALJ's decision "the Commissioner's final decision for [judicial] review." *Krauser v. Astrue*, 638 F.3d 1324, 1327 (10th Cir. 2011).

## II.     Judicial review of the Commissioner's final decision.

### A.     Review standard.

The Court reviews the Commissioner's final decision to determine "whether substantial evidence supports the factual findings and whether the ALJ applied the correct legal standards." *Allman v. Colvin*, 813 F.3d 1326, 1330 (10th Cir. 2016). Substantial evidence is "more than a scintilla, but less than a preponderance." *Lax*, 489 F.3d at 1084; *see also Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) ("It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.")

(internal quotation marks and citation omitted). A decision is not based on substantial evidence "if it is overwhelmed by other evidence in the record." *Wall*, 561 F.3d at 1052 (citation omitted). The Court will "neither reweigh the evidence nor substitute [its] judgment for that of the agency." *Newbold v. Colvin*, 718 F.3d 1257, 1262 (10th Cir. 2013) (citation omitted).

**B.   Substantial evidence supports the ALJ's decision.**

**1.   Substantial evidence supports the ALJ's assessment of Dr. Riggs's opinion.**

Plaintiff asserts that the ALJ improperly discounted Dr. Riggs's medical source statement. Dr. Riggs concluded:

- Plaintiff's prognosis was "poor";
- her symptoms included "fatigue, nausea, morning stiffness, joint stiffness, swelling and worsening pain in lower back";
- she has pain in her back, hands, feet, knees, shoulder, and c-spine and rates her pain 9 out of 10;
- her positive objective signs include weight change, tenderness, reduced grip strength, and swelling;
- she has depression;
- she could walk less than one city block;
- she could sit or stand less than two hours in an eight-hour working day;
- she can occasionally lift less than ten pounds; she can never twist, crouch, or climb ladders;
- she can rarely climb stairs;
- she can occasionally stoop; she has significant limitation with reaching, handling, or fingering;
- she can use her hands/fingers/arms "0-33%" and any activity with her hands/fingers/arms are similarly limited;
- she is incapable of even low stress work;

- she is likely to be off task 25% or more; she will have good days and bad days and requires more than four days off per month because of her impairments; her impairments are reasonably consistent with the symptoms and functional limitations described in the evaluation; and
- she should avoid all unprotected heights and being around moving machinery and should limit her exposure to dust, fumes, and
gases.

AR 424-27.

The ALJ does "not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion . . . including those from [the claimant's] medical sources." 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Rather, the ALJ evaluates the persuasiveness of medical opinions by the claimant's physician using five factors, the most important of which are supportability and consistency. *Id.* §§ 404.1520c(a), 416.920c(a); s*ee also Zhu v. Comm'r of Social Security*, 2021 WL 2794533, at *6 (10th Cir. July 6, 2021).

> "Supportability" examines how closely connected a medical opinion is to the evidence and the medical source's explanations: "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s)[,] . . . the more persuasive the medical opinions . . . will be." "Consistency," on the other hand, compares a medical opinion to the evidence: "The more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . will be."

*Zhu*, 2021 WL 2794533, at *6 (citations omitted).

In considering Dr. Riggs's opinion, the ALJ found it

> is not consistent with the record or supported by Dr. Riggs['s]
> treatment history with [Plaintiff]. Throughout the record, [she]
> had adequate gait and range of motion in her neck. Dr. Riggs['s]
> treatment notes show that [Plaintiff's] pain level has improved
> with lumbar facet injections, and she was in no acute distress. For
> these reasons, the undersigned does not find this opinion to be
> persuasive.

AR 25.

Plaintiff challenges the ALJ's failure to address her hand problems in his persuasiveness analysis. Doc 16, at 14-15. She acknowledges short-lived improvement, but not the overall relief that the ALJ found. *Id.* at 14. And she argues that the record lacks any grip strength testing except for Dr. Riggs's medical source statement. *Id.* at 16.

The ALJ adequately addressed Plaintiff's musculoskeletal disorders, swelling, and inflammatory arthritis. AR 24. Pertinent to her hands, he stated

> While she has pain in her hands, she reported that conservative
> treatment had improved her functioning and pain levels. Despite
> intermittent pain and joint stiffness, she revealed that her
> symptoms have improved. . . . The claimant had very limited
> treatment during this period. The record does not show reduced
> grip strength or significant abnormalities handling objects. The
> claimant denied any side effects from her medication or injections.
> The record does not support further accommodations for these
> impairments.

*Id.* (internal AR citations omitted).

### 2. Substantial evidence supports the ALJ's formulation of the RFC assessment.

In crafting Plaintiff's RFC, the ALJ considered Plaintiff's hearing testimony, the objective medical evidence (including positive and negative exam findings), Plaintiff's treatment history, and Dr. Riggs's medical source opinion. The ALJ considered all of Plaintiff's alleged impairments. *Id.* at 23-24.

The ALJ also discounted Plaintiff's consistency. *Id.* at 24. He found her allegations of joint stiffness, swelling and pain had some support in the record. *Id.* at 23. The conservative treatment Plaintiff received had resulted in improvement and the ALJ noted the record showed no reduced grip strength or significant abnormalities handling objects. *Id.* at 24 (citing *id.* at 313). And the ALJ imposed exertional, postural, and manipulative limitations to account for her hand pain and swelling. *Id.* at 23, 24.

Although Plaintiff argues that no medical source statement supports the ALJ's RFC assessment, Doc. 16, at 16, this overlooks Plaintiff's role in that omission. Plaintiff failed to respond to multiple requests for completion of the adult function report, her work history report, and a third-party activities of daily living report. AR 90, 110 (listing three written requests and two phone calls). No mail was returned as undeliverable. *Id.* State agency physician Dr. Karl D. Boatman (and similarly, Dr. Charles M. Murphy on reconsideration)

had insufficient evidence to issue a medical evaluation because Plaintiff failed to cooperate. *Id.* Although there was insufficient evidence to make an evaluation, the state agency physicians did not order a consultative physical examination, noting "it was unlikely [Plaintiff] would attend a scheduled" examination, given her "fail[ure] to cooperate with the disability process." *Id.* at 91, 110. Ultimately, the state agency physicians found Plaintiff not disabled. *Id.* at 92, 111. At the hearing, the ALJ stated, "We sent several forms to the claimant, didn't get them back timely. That makes it difficult, sometimes early in the process for us to evaluate these claims. Could you touch on that and find out what's going on?" *Id.* at 44. And Plaintiff's counsel replied, "Absolutely." *Id.*

When asked by counsel at the hearing about the incomplete paperwork, Plaintiff remembered getting the forms, and stated she "filled out a portion of those" and that she had "difficulty understanding some of the questions." *Id.* at 45. Counsel also stated, "the problem is probably at my end." *Id.* Plaintiff offers no further response about her failure to cooperate.

In connection with his argument that substantial evidence does not support the RFC, Plaintiff charges the ALJ "play[ed] doctor" in crafting the RFC assessment, emphasizing that no other doctor reached the conclusion the ALJ did. Doc. 16, at 17-18. While an ALJ cannot substitute her own lay opinions for those given by a medical expert, that is not what happened here.

*See McGoffin v. Barnhart*, 288 F.3d 1248, 1252 (10th Cir. 2002); *see also* 20 C.F.R. §§ 404.1520c(c), 416.920c(c) (listing factors an ALJ considers in evaluating medical opinions). Rather, the ALJ proffered an adequate explanation for rejecting Dr. Riggs's opinion and determined Plaintiff's RFC based on the evidence of record, which included Dr. Riggs's treatment notes. The Court finds no error. *See Trujillo v. Colvin*, 626 F. App'x 749, 752-53 (10th Cir. 2015) (ALJ was not "playing doctor" when analyzing physician's opinion "against the backdrop of the other . . . evidence"); *Sylvia Lee v. Berryhill*, 2017 WL 2892338, at *5 (W.D. Okla. June 15, 2017) (The ALJ's statement that "findings from examination do not support the alleged severity of [Plaintiff's] complaints" was not an example of the ALJ "playing doctor," but "st[ood] for the proposition that the medical evidence d[id] not support the level of severity of the impairments alleged by [the plaintiff]."), *adopted*, 2017 WL 2880862 (W.D. Okla. July 6, 2017).

"[T]he ALJ, not a physician, is charged with determining a claimant's RFC from the medical record." *Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir. 2012) (internal quotations and citations omitted); *see also Corber v. Massanari*, 20 F. App'x 816, 822 (10th Cir. 2001) ("The final responsibility for determining RFC rests with the Commissioner, and because the assessment is made based upon all the evidence in the record, not only the relevant medical evidence, but

it is also well within the province of the ALJ." (citations omitted)). Although it may be inappropriate for the ALJ to reach an RFC assessment without expert medical assistance when her determination seriously conflicts with the medical opinions, *Wells v. Colvin*, 727 F.3d 1061, 1072 (10th Cir. 2013), the Court concludes that is not the case here.

Any gaps in the record resulted from Plaintiff's inability to complete the necessary paperwork and counsel's admitted "problem" at his end. AR 45. Nor did counsel request further medical examinations. "[I]f the claimant's attorney does not request a consultative examination, the ALJ has no duty to order one unless the need 'is clearly established in the record.'" *Jazvin v. Colvin*, 659 F. App'x 487, 489 (10th Cir. 2016) (quoting *Hawkins v. Chater*, 113 F.3d 1162, 1168 (10th Cir. 1997)). Plaintiff's counsel made no such request before the ALJ, nor does Plaintiff's counsel do so here. The Court finds that substantial evidence supports the ALJ's RFC assessment.

## III.  Conclusion.

For the above reasons, the Court affirms the Commissioner's final decision.

**ENTERED** this 26th day of July, 2022.

SUZANNE MITCHELL
UNITED STATES MAGISTRATE JUDGE